474 N.W.2d 539 (1991)
In the Matter of the ESTATE OF Beulah E. DeVOSS, Deceased.
J.W. McGRATH, Executor of the Estate of Beulah DeVoss, Appellee,
Robert T. Carlson, Jr., Connie L. Scharffenburger, and Randy Carlson, Intervenors-Appellants,
v.
Kent BERRYMAN and Kathy Berryman, Husband and Wife; Bobby Darrell Holsapple and Barbara Joan Holsapple, Husband and Wife; Glen Randolph; and William Elmer Foster, Appellees.
No. 90-1076.
Supreme Court of Iowa.
September 18, 1991.
*540 H. Richard Smith and David Swinton of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellants.
Kenneth L. Keith of Keith, Orsborn, Milani & Neary, Ottumwa, for appellees Kent Berryman, Kathy Berryman, Bobby Darrell Holsapple, Barbara Joan Holsapple, and Glen Randolph.
Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.
HARRIS, Justice.
Disinherited heirs were denied the right to intervene in this declaratory judgment action. The action was brought by the executor to determine the validity of deeds signed by the decedent. In this appeal the heirs seek to dispute the denial. We agree that their interest in the litigation was too remote to entitle them to intervene. We thus affirm.
Beulah DeVoss survived her husband Don by only six weeks. They were a wealthy couple; Beulah's total estate was worth nearly $3 million and included the following:

 Real property:
 North Pulaski Farm $155,700
 Milton Farm 414,850
 West Cantril Farm 279,301
 Other real property 984,736
 ________
 Total Real Property: 1,834,587
 Personal property: 887,196
 __________
 TOTAL ASSETS OF ESTATE: $2,721,783

The three farms had been leased for many years to three couples who are defendants (hereinafter "the tenants"). Kent and Kathy Berryman leased the North Pulaski Farm, Bobby and Barbara Holsapple leased the West Cantril Farm, and Glen Randolph leased the Milton Farm.
On October 28, 1988two weeks after Don's death and four weeks before Beulah's deathBeulah executed a will. It included the following bequests:
2. All real property to William Elmer Foster
3. 2% of the remainder of the estate to each of nine named charities
4. All remainder of the estate to the Van Buren County Hospital; or, if this last bequest fails for some reason, the remainder equally to the nine charities listed in the second bequest.
Also on October 28, 1988, Beulah signed three quitclaim deeds. The first deed conveyed the North Pulaski Farm to the Berrymans, the second deed conveyed the West Cantril Farm to the Holsapples, and the third deed conveyed the Milton Farm to Randolph. The deeds were signed by Beulah but not acknowledged. Rather than deliver the deeds to the grantees, Beulah gave them to her attorney who placed them in his office safe. The parties dispute whether she intended the deeds to be delivered at that time or whether she told her attorney to wait for further instructions.
Beulah died several weeks later, and confusion soon arose regarding ownership of the three farms. Beulah's attorney and executor of her estate, J.W. McGrath, filed a declaratory judgment action in district court to resolve ownership. The tenants claimed that Beulah and Don's public statements over the years showed that they intended to deed the farms to them. Testimony of McGrath, however, indicated that Beulah did not intend for the deeds to be delivered.
Another dispute arose. At the time of her death Beulah's heirs-at-law were Robert Carlson, Jr., and Randy Carlson (her great-nephews), and Connie Scharffenburger *541 (her great-niece) (hereinafter "the heirs"). The heirs filed a petition challenging Beulah's will on the ground of undue influence. After a jury trial, judgment was entered upholding the will. The effect was to deny the heirs any interest in Beulah's estate.
William Elmer Foster, the real property devisee under the will, changed his position during these proceedings. Initially Foster took the position that the three deeds to the tenants were invalid. At some point, however, he apparently changed his position and testified at the will contest trial that he would not dispute the tenants' position that Beulah intended for them to receive the three farms. When they learned that Foster would no longer argue the deeds were invalid, the heirs moved to intervene in the declaratory judgment action. The district court denied intervention. It later ruled that the deeds were valid and the tenants were entitled to the three farms.
The heirs appealed both the judgment upholding the will and two rulings which denied them permission to intervene in the declaratory judgment action. The heirs later settled their dispute with Foster (and the Van Buren County Hospital). As a part of this settlement the heirs dismissed their appeal in the will contest. The heirs then obtained a limited remand of their declaratory judgment action appeal in order for the district court to reconsider its denial of intervention. The heirs thought reconsideration was appropriate because, under the settlement, the heirs acquired all of Foster's interests. On remand the district court however again denied the heirs' intervention. Both orders denying intervention are now before us for review.
One other dispute, involving the abatement of taxes, arises from Beulah's estate. It implicates the charities named in the will and is the subject of a separate appeal. It will be addressed in a separate opinion filed today. In re DeVoss, 474 N.W.2d 542 (Iowa 1991).
I. Confusion surrounds the scope of review from denials of intervention. The confusion stems from the fact that most intervention rules allow for two types of intervention: intervention by right and permissive intervention. Iowa rule of civil procedure 75 gives a clear right of intervention to a party "interested" in the litigation.[1] Hence, in Rick v. Boegel, 205 N.W.2d 713, 715 (Iowa 1973), we reviewed the trial court's "dismissal" of a petition for intervention on error, as we would review a ruling granting a motion to dismiss.
Most disputes on the question will, as the present one does, revolve around an evaluation of the "interest" claimed by the party seeking to intervene, and we think this evaluation should properly be on error. But, even though review is on error, the trial court is accorded a certain amount of discretion to deny intervention in proper cases.
For this reason the rule most often stated is that review is on error, with some deference given to the district court's discretion. This is the rule we adopt. See Colman v. Colman Found., Inc., 199 Neb. 263, 264-65, 258 N.W.2d 128, 129 (1977) (intervention granted by statute reviewed on error; intervention independent of statute reviewed for abuse of discretion); Gayner v. Packaging Serv. Corp. of Ky., 636 S.W.2d 658, 660 (Ky.App.1982) (standard of review is "whether the decision of the circuit court was erroneous"); International Ass'n of Machinists v. Nickel, 20 Wis.2d 42, 45-47, 121 N.W.2d 297, 299-300 (1963); 59 Am.Jur.2d Parties § 168, at 659-66 (1987).
II. As mentioned, the heirs were denied intervention at two stages, and the question on appeal is whether, at either stage, their "interest" in the litigation qualified under rule of civil procedure 75. At both stages they were disinherited; they had no interest under Beulah's will. To remedy *542 this they contested the will, but were unsuccessful.
The heirs contend their appeal of the jury verdict qualified them as interest holders. We however think this string of suppositions is far too tenuous to call for reversing the decision to deny intervention. A potential intervenor generally must have more than a mere speculative or contingent interest in the litigation in order to intervene. We have previously approved the following language:
One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree therein.
In re J.R., 315 N.W.2d 750, 752 (Iowa 1982) (quoting 59 Am.Jur.2d Parties § 138, at 567 (1971), currently 59 Am.Jur.2d Parties § 135, at 593-96 (1987)).
We rejected a claim to intervene in Edmundson v. Miley Trailer Co., 252 N.W.2d 415 (Iowa 1977). In Edmundson the owner of a horse injured in a trailer involved in a car accident was not allowed to intervene in an action between the car's owner and the trailer manufacturer. The owner of the horse argued he should be allowed to intervene because the action might have res judicata effect on any possible subsequent action filed by him against the third party. This "interest," we held, was too indirect, remote, and conjectural.
The rule elsewhere also seems well settled that contingent interests are insufficient to allow intervention by right. See, e.g., Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir.1989) ("The interest must be direct, not contingent."); Faircloth v. Mr. Boston Distiller Corp., 245 So.2d 240, 244 (Fla.1970) ("The intervenor must show that he will gain or lose by the direct legal operation and effect of the judgment. A showing of indirect, inconsequential or contingent interest is wholly inadequate."); Stuart v. Richardson, 407 S.W.2d 716, 717 (Ky.1966); Colman, 199 Neb. at 164-65, 258 N.W.2d at 129.
III. The heirs' position did not improve at the second stage. As a part of their settlement with Foster, and one of the charity beneficiaries, the heirs dismissed their appeal in the will contest. In return they received, among other things, all of Foster's interest in the deeds at issue in the declaratory judgment action. At the second stageon limited remandthe heirs contended their right to the deeded property was no longer contingent and they should accordingly be allowed to intervene.
The district court correctly rejected this contention. Because the declaratory judgment action was final as to Foster and the tenants, Foster lost all rights to the deeded property and hence had none to assign to the heirs as part of the settlement agreement. The heirs' interest was too remote at either stage to entitle them to intervention.
IV. The heirs also attempt to appeal from final judgment in the declaratory judgment action. The tenants correctly contend the heirs have no standing to do so. Lorber v. Connor, 82 Iowa 739, 740, 47 N.W. 1006, 1006 (1891) (one denied intervention is not a party to final judgment and cannot appeal from it).
AFFIRMED.
NOTES
[1] Iowa rule of civil procedure 75 states:

Any person interested in the subject matter of the litigation, or the success of either party to the action, or against both parties, may intervene at any time before trial begins, by joining with plaintiff or defendant or claiming adversely to both.